UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN, SOUTHERN DIVISION

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x
BISSELL HOMECARE, INC.

                Plaintiff,

      v.

DYSON, INC.,

                Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - x

No. 08-CV-724 (RJJ)
**ORAL ARGUMENT AND EXPEDITED HEARING REQUESTED**

Honorable Robert J. Jonker

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT
 OF ITS MOTION TO MODIFY THE CASE MANAGEMENT ORDER**

                Richard A. Gaffin
                Joseph M. Infante
                MILLER, CANFIELD, PADDOCK
                AND STONE, P.L.C.
                1200 Campau Square Plaza
                99 Monroe Avenue, N.W.
                Grand Rapids, Michigan 49503
                (616) 454-8656
                gaffin@millercanfield.com

                *Attorneys for Defendant Dyson, Inc.*

OF COUNSEL:
Garrard R. Beeney
Richard C. Pepperman, II
James T. Williams
Jane J. Jaang
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

May 28, 2010

## TABLE OF CONTENTS

INTRODUCTION ……………...………………………………………………………………2

BACKGROUND ……………………...……..……………………………………………..4

ARGUMENT ……………………...…………………………………..………………....11

CONCLUSION .………………………...…………………………………………………….15

# TABLE OF AUTHORITIES

**CASES**

*aaiPharma, Inc.* v. *Kremers Urban Dev. Co.*,
    361 F. Supp. 2d 770 (N.D. Ill. 2005) ...................................................................................12

*Am. Seating Co.* v. *Kustom Seating Unlimited, Inc.*,
    No. 1:07-CV-1284, 2010 WL 48951 (W.D. Mich. Feb. 4, 2010) ..........................................13

*Automotive Techs. Int'l, Inc.* v. *Siemens VDO Automotive Corp.*,
    669 F. Supp. 2d 836 (E.D. Mich. 2009) ................................................................................12

*C.F.* v. *Capistrano Unified Sch. Dist.*,
    656 F. Supp. 2d 1190 (C.D. Cal. 2009) .................................................................................11

*Ed Tobergte Assoc. Co.* v. *Russell Brands, LLC*,
    259 F.R.D. 550 (D. Kan. 2009) .............................................................................................11

*Hilton-Rorar* v. *State & Fed. Commc'ns Inc.*,
    No. 5:09-CV-01004, 2010 WL 1956584 (N.D. Ohio May 13, 2010) ...............................11, 14

*Leary* v. *Daeschner*,
    349 F.3d 888 (6th Cir. 2003) .................................................................................................11

*McKesson Info. Solutions, Inc.* v. *Bridge Med., Inc.*,
    487 F.3d 897 (Fed. Cir. 2007) ...............................................................................................11

*Plymouth Indus., LLC* v. *Sioux Steel Co.*,
    No. 8:05CV196, 8:05CV469, 2006 WL 695458 (D. Neb. Mar. 17, 2006) ...........................12

*Powell* v. *The Home Depot U.S.A., Inc.*,
    No. 07-80435-CIV, 2009 WL 3855174 (S.D. Fla. Nov. 17, 2009) .......................................12

**FEDERAL RULE**

Fed. R. Civ. P. 16(b) ...................................................................................................................10

Defendant Dyson, Inc. ("Dyson") respectfully submits this memorandum of law in support of its motion, pursuant to Rule 16(b) of the Federal Rules of Civil Procedure, to modify the schedule in the Court's Case Management Order of September 16, 2009 (the "CMO," D.E. # 54), as previously modified by the parties' stipulation entered by this Court on April 28, 2010.

Dyson makes this motion because it has become apparent that Dyson cannot complete the discovery it requires to prepare its opening expert reports currently due on July 7. As set out in detail below, there are at least six depositions that Dyson must schedule and take before serving its opening expert reports, several categories of documents that both parties are still producing, and certain categories of discovery subject to dispute and recently-filed motions to compel. While the parties are actively seeking to resolve the issues raised in their respective motions, and continue to make progress on a daily basis, substantial document discovery remains unfinished. Consequently, Dyson respectfully requests that the Court extend the expert-related deadlines by approximately two months in order to permit Dyson to complete necessary document and deposition discovery. Such an adjustment of the expert-related deadlines will require an extension of the other dates in the schedule. Dyson therefore proposes that the discovery cutoff date be similarly extended, that dispositive motions be due approximately six weeks after the close of discovery, and that the trial date be extended by approximately five and a half months (subject to the Court's schedule) to allow the parties to brief fully and argue dispositive motions that may narrow the issues for trial.

Dyson believes that these proposed modifications are necessary in light of the current state of discovery and to allow the parties to have the benefit of this Court's *Markman* ruling in preparing their expert reports. Pursuant to Local Civil Rule 7.1(d), counsel for Dyson

and Plaintiff BISSELL Homecare, Inc. ("Plaintiff") have conferred in an effort to reach an agreement on modifications to the existing schedule, but Plaintiff's counsel has stated that Plaintiff "will not agree to a blanket extension of all dates in the Case Management Order" or to a change in the trial date.[1]

## INTRODUCTION

When the parties appeared for the Rule 16 scheduling conference on September 15, 2009, they were able largely to agree upon the overall schedule for this case, which was modeled on the schedule set in the case between Plaintiff and TTI Floor Care North America. The ensuing months have revealed, however, that the parties' initial projections were overly optimistic.

The first impediment to the schedule set forth in the CMO arose shortly after the Rule 16 conference, when Plaintiff served its Preliminary Infringement Contentions on September 25, 2009. The parties spent several weeks trying to resolve their differences regarding Plaintiff's Preliminary Infringement Contentions, while they were both actively engaged in discovery. In October 2009, Plaintiff raised concerns regarding the scope of Dyson's document production. Unable to resolve these issues, both parties filed motions to compel but continued their efforts to resolve their disputes, including ultimately unsuccessful attempts to narrow the 14 Accused Products to some smaller number of "exemplary products." The parties' motions to compel were not resolved until January 15, 2010 during a hearing before Magistrate Judge Brenneman.

---

[1] By letter dated May 26, 2010 (Ex. 1), Plaintiff's counsel stated that it might consider extensions of certain individual dates by "a week or two." For the reasons set forth herein, Dyson believes that extensions of a week or two to certain individual deadlines would be insufficient.

While the parties' disputes were ongoing, they nonetheless met every other deadline set forth in the CMO, including Dyson's service of its Prior Art Statement and the parties' filing of their Joint Statement of Claim Interpretation Issues.  In March 2010, however, looking ahead to the deadlines for expert disclosures and reports, Plaintiff's counsel approached Dyson's counsel about possible modifications to the expert-related deadlines.[2]  On April 20, 2010, the parties submitted a stipulation that proposed an extension of the schedule in the CMO with respect to expert disclosures, expert reports, discovery and the ADR conference.  (D.E. # 113.)  The Court entered that stipulation on April 28, 2010.

At the end of the *Markman* hearing on April 30, 2010, the Court offered to address any additional scheduling issues should they arise, and such issues have in fact arisen.  Although deadlines for expert disclosures and expert reports for the party bearing the burden of proof are fast approaching on June 22 and July 7, respectively, both parties are still in the midst of, among other things, producing documents and scheduling depositions of fact witnesses whose testimony may be critical to each party's opening expert reports, including depositions of the inventors of the patents-in-suit.  While Dyson is hopeful that at least some of these depositions may occur within the next several weeks, documents necessary for the depositions have yet to be produced and remain the subject of dispute between the parties.

Dyson believes that it needs to take at least six depositions of fact witnesses before serving its opening expert reports, but currently, none of those depositions has been scheduled.  Moreover, Dyson still does not have all of the documents it needs to take these depositions in an efficient way.  Accordingly, Dyson believes that the expert-related deadlines

---

[2]     In the course of negotiating those proposed modifications, Dyson's counsel advised Plaintiff's counsel that Dyson believed that modifications to the overall schedule would likely be necessary as well.

need to be extended by two months, which will require an adjustment to the overall schedule. Dyson proposes that the schedule be modified as set forth below:

| EVENT | CURRENT DATE | PROPOSED DATE |
|---|---|---|
| Disclosure of expert witnesses pursuant to Fed. R. Civ. P. 26(a)(2)(A) for the party with the burden of proof | June 22, 2010 | August 30, 2010 |
| Service of expert reports pursuant to Fed. R. Civ. P. 26(a)(2)(B) for the party with the burden of proof | July 7, 2010 | September 13, 2010 |
| Disclosure of rebuttal expert witnesses pursuant to Fed. R. Civ. P. 26(a)(2)(A) | July 22, 2010 | September 24, 2010 |
| Service of rebuttal expert reports pursuant to Fed. R. Civ. 26(a)(2(B) | August 6, 2010 | October 8, 2010 |
| Discovery deadline | September 15, 2010 | November 22, 2010 |
| Deadline for ADR conference | September 17, 2010 | December 13, 2010 |
| Deadline for filing dispositive motions | N/A[3] | January 10, 2011 |
| Final pretrial conference | December 20, 2010 | Late May 2011 (exact date TBD based upon Court's schedule) |
| Trial | January 10, 2011 | Early June 2011 (exact date TBD based upon Court's schedule) |

## BACKGROUND

Since September 2009, the parties have been actively engaged in discovery in this matter and have complied with every deadline set by this Court in its CMO. Notwithstanding the parties' efforts, Dyson believes that the existing schedule is untenable in view of a number of outstanding issues in the case and the status of document and deposition discovery.

---

[3] The CMO did not include a deadline for filing of dispositive motions, and the parties' April 20, 2010 stipulation did not address dispositive motions either.

### A. Current Status of Discovery

To date, Dyson has produced approximately 340,000 pages of documents to Plaintiff from its facilities in the United States, Malaysia, Singapore and England in response to Plaintiff's 84 individually numbered document requests. For its part, Plaintiff has produced approximately 100,000 pages of documents to Dyson.

Both parties are continuing to produce documents. Plaintiff sent Dyson its most recent document production, consisting of approximately half of its production to date, on May 14, 2010. In a letter dated May 26, 2010, Plaintiff also noted that its production of documents relating to the filing and prosecution of U.S. Patent No. 7,247,181 ("the '181 patent") would not be complete until June 10, 2010—and even then, it would be "subject to BISSELL's commitment that it will continue to review the likely repositories of responsive documents." (Ex. 1.) In addition to what Dyson has already produced, Dyson has made several document productions to Plaintiff this month, and Dyson is in the process of reviewing additional documents for production.

Both parties also are continuing to serve discovery requests. On April 26, 2010, Dyson served Plaintiff with its Fourth Request for Production of Documents, and Plaintiff served Dyson with its most recent Fourth Set of Requests for Production of Documents and its Third Set of Interrogatories that same day. On May 11, 2010, Plaintiff served its second Rule 30(b)(6) deposition notice.

Thus far, Dyson has made two witnesses available for depositions. On March 25, 2010, Peter Gammack, one of Dyson's engineers from England, was deposed in New York on various Rule 30(b)(6) topics relating to the design of the 14 Accused Products. On May 20, 2010, Stephen Organ, a Dyson engineer from Singapore, was deposed in New York. Dyson also

has agreed with Plaintiff to make Martin McCourt, the CEO of Dyson Ltd. and acting President of Dyson, available for his deposition on June 30, and to make Mr. Gammack available for a deposition in his individual capacity on July 2.

### B. Outstanding Discovery Requests

Under the existing schedule, expert reports for the party bearing the burden of proof are due on July 7. Both parties are still seeking documents and deposition testimony that will be necessary for the July 7 opening reports.

Critical to Dyson's claims and defenses of invalidity, unenforceability and inequitable conduct are documents not yet produced in their entirety and testimony not yet taken regarding (i) the conception and reduction to practice of the inventions claimed in the patents-in-suit, (ii) the filing and prosecution of applications related to those patents, and (iii) the prior art that was considered, evaluated and ultimately presented or not presented to the United States Patent & Trademark Office (the "USPTO"). To prepare its expert reports on invalidity, unenforceability and inequitable conduct, Dyson has requested but not yet received:

- Documents from Wayne Conrad, the named inventor of U.S. Patent Nos. 6,344,064 and 6,582,489 (collectively, the "Conrad patents");

- Documents from Bereskin & Parr LLP ("Bereskin & Parr"), the Canadian law firm that prosecuted the Conrad patents before the USPTO;

- Deposition testimony from Mr. Conrad and Philip Mendes da Costa, the lawyer from Bereskin & Parr who prosecuted the Conrad patents;

- Plaintiff's completed production of documents relating to the '181 patent, including the conception and reduction to practice of the invention allegedly claimed therein;

- A final agreement with Plaintiff on what Plaintiff and the '181 patent inventors will produce regarding the Amway CMS 1000 (the "CMS 1000") vacuum cleaner—a critical piece of prior art—as well as the actual production of those documents;[4]

- Deposition testimony from David McDowell, Samuel Hansen and Gary Smith, three of the four inventors of U.S. Patent No. 7,247,181 ("the '181 patent")[5] who are currently represented by Plaintiff's counsel;

- Resolution of certain privilege claims asserted by the law firm of McGarry Bair PC ("McGarry Bair"), which prosecuted the '181 patent; and

- Deposition testimony from John McGarry, the lawyer from McGarry Bair who prosecuted the '181 patent.

Notwithstanding its continued efforts to press these issues, Dyson does not believe that it can obtain all of the above-listed discovery in time to review and analyze the materials and for its experts to prepare their analysis on the issues of invalidity, unenforceability and inequitable conduct by July 7.

With respect to Messrs. Conrad and Mendes da Costa, those individuals reside in Canada, and Dyson is in the process of enforcing the letter rogatory issued by this Court on May 21.[6] Because they are unwilling to cooperate voluntarily with Dyson's discovery requests, Dyson has not been able to schedule depositions of either Mr. Conrad or Mr. Mendes da Costa,

---

[4] Dyson believes that the CMS 1000 may invalidate and/or render unenforceable 15 of the claims in the '181 patent asserted against Dyson. Discovery relating to the CMS 1000 is the subject of Dyson's pending Motion to Compel Production of Documents (D.E. # 131), filed on May 24. As of the date of this motion, counsel for Plaintiff and Dyson have made additional efforts to reach a compromise on the scope of discovery relating to the CMS 1000. As yet, no final agreement has been reached by the parties, and neither Plaintiff nor the '181 patent inventors have produced all of the requested documents.

[5] Eric Metzger is the fourth inventor of the '181 patent. Mr. Metzger is not currently represented by Plaintiff's counsel, and Dyson has not yet subpoenaed him.

[6] Prior to moving for the issuance of a letter rogatory, Dyson's counsel tried on multiple occasions to obtain Mr. Mendes da Costa's consent to provide discovery relating to the prosecution of the Conrad patents, both on behalf of Bereskin & Parr and Mr. Conrad, but those attempts were unsuccessful. (D.E. # 124, ¶ 5.)

and it has received no documents from Mr. Conrad or Bereskin & Parr.[7] It is unclear how quickly the Canadian court will act on the letter rogatory issued by the Court.

With respect to Mr. McGarry, Dyson's counsel has been trying for several weeks to schedule a date for Mr. McGarry's deposition that will be mutually acceptable to Mr. McGarry and counsel for Plaintiff. (Ex. 2.) Despite these efforts, that deposition has not yet been scheduled. In addition, although McGarry Bair has produced documents in response to Dyson's subpoena *duces tecum*, there are questions about a limited number of documents (which Dyson believes may be critical) withheld by McGarry Bair on the basis of privilege. Dyson has been trying to resolve these questions with McGarry Bair prior to taking Mr. McGarry's deposition. (Ex. 3.)

With respect to the depositions of Messrs. McDowell, Hansen and Smith, those depositions were initially scheduled to occur during the week of May 24. Dyson scheduled these depositions expecting that it would have at least the following categories of documents regarding the '181 patent in advance of the depositions:

- Documents in response to Dyson's First Set of Requests for Production (served on October 19, 2009) relating to the filing and prosecution of the '181 patent and the conception and reduction to practice of the inventions claimed therein (Ex. 4, Request Nos. 7, 9, 13, 15, 16, 18, 19 and 50); and

- Documents relating to the CMS 1000, which Dyson requested in subpoenas *duces tecum* to Messrs. McDowell, Hansen and Smith (Ex. 5, Request Nos. 9-12) served on April 19, 2010,[8] and in documents requests to Plaintiff served on April 20, 2010 (Ex. 6, Request Nos. 65-69, 71).

---

[7] In October 2009, Dyson requested from Plaintiff any documents it has relating to the Conrad patents. (Ex. 4, Request Nos. 3, 7, 9, 13, 16, 16, 18, 19 and 50.) Plaintiff has represented that its files regarding the Conrad patents are "limited" because Plaintiff acquired those patents from other entities. (Ex. 7.)

[8] In March, prior to serving the formal subpoenas, Dyson's counsel had sent Plaintiff's counsel a courtesy copy of the document requests for the '181 patent inventors.

-8-

By May 20, 2010, however, Dyson still had not received the requested documents that it considered to be necessary to take the '181 inventors depositions. Dyson thus requested that the depositions of Messrs. McDowell, Hansen and Smith be rescheduled for at least the following reasons. *First*, it was unclear whether the '181 patent inventors had completed their document production in response to Dyson's subpoenas. (Ex. 8.) In fact, on May 24, the day before Mr. McDowell's deposition was originally scheduled to occur, Plaintiff's counsel produced additional documents on Mr. McDowell's behalf. (Ex. 9.) *Second*, it was unclear what the status of Plaintiff's document production was regarding the '181 patent in response to Dyson's First Set of Requests for Documents, despite several inquiries made by Dyson to resolve that issue in April and again in May. (Exs. 8, 10, 11.) Plaintiff did not inform Dyson until May 26 that its document production regarding the filing and prosecution of the '181 patent application was still incomplete and would not be completed until June 10. (Ex. 1.) *Third*, as of May 20, Plaintiff and the '181 patent inventors were refusing to produce any documents relating to the CMS 1000 because Dyson had not identified that prior art reference in its pleadings or its October 2009 Prior Art Statement.[9] Given the importance of the CMS 1000 to Dyson's invalidity and unenforceability defenses with respect to many of asserted claims in the '181

---

[9] In response to the objections raised by Plaintiff and the '181 patent inventors to producing documents relating to the CMS 1000, Dyson pointed out that the CMO required that Dyson disclose by October 30, 2009, only those references "*then* known to [Dyson] and on which [Dyson] *then* intend[ed] to rely for invalidity contentions." (CMO at 1 (emphasis added).) Dyson informed Plaintiff that the relevance of the CMS 1000 became apparent only after Plaintiff served Supplemental Infringement Contentions, as ordered by Magistrate Judge Brenneman on January 15, 2010, which clarified Plaintiff's contentions regarding the "separator plate" claim limitation in the '181 patent, to which the CMS 1000 is relevant. In an effort to resolve this dispute, Dyson served Plaintiff with a Supplemental Prior Art Statement on May 13, 2010 that identified the CMS 1000, but Plaintiff and the '181 patent inventors maintained their objections. (*See* D.E. # 132 at 3-4.)

patent, Dyson filed a Motion to Compel Production of Documents on May 24. (D.E. # 131.)[10] In light of these issues, Dyson canceled the depositions of the '181 patent inventors and asked that they be rescheduled for sometime in June.

For its part, Plaintiff has outstanding requests for Rule 30(b)(6) depositions relating to Dyson's U.S. sales and advertising for the 14 Accused Products in response to a second Rule 30(b)(6) notice of deposition served on May 11, 2010.[11] Dyson is attempting to schedule those depositions for sometime in late June. Furthermore, Plaintiff has also filed its own motion to compel regarding Dyson's responses to Plaintiff's interrogatories. (D.E. # 133.)

\* \* \*

Although substantial discovery has occurred, and Dyson respectfully submits that it has diligently sought to adhere to the existing schedule in the CMO, the current status of discovery as outlined above severely affects Dyson's ability to prepare its opening expert reports, which currently are due on July 7, 2010. As explained above, Dyson believes that it cannot obtain all of the needed discovery and prepare opening expert reports in the short time that remains before July 7. Moreover, both parties' expert reports will be significantly affected by the Court's *Markman* ruling on the disputed claim terms.

---

[10] As of May 20, Dyson understood that Plaintiff and the '181 patent inventors would not provide any discovery related to the CMS 1000 or any prior art reference not listed in Dyson's pleadings or original Prior Art Statement. (Ex. 8; *see also* D.E. # 132 at 5.) After Dyson filed its Motion to Compel, Plaintiff offered as a compromise to produce certain materials relating to the CMS 1000. Dyson is optimistic that the parties ultimately will be able to resolve their dispute, but no documents on this issue have been produced yet, notwithstanding Dyson's requests for such materials as early as April 19 and 20.

[11] Dyson anticipates serving its written objections to Plaintiff's recent Rule 30(b)(6) notice on or before June 1, and it is making every effort to schedule those depositions as soon as possible.

## ARGUMENT

Rule 16(b) of the Federal Rules of Civil Procedure allows modifications to a schedule for "good cause and with the judge's consent." FED. R. CIV. P. 16(b)(4); *see also Hilton-Rorar* v. *State & Fed. Commc'ns Inc.*, No. 5:09-CV-01004, 2010 WL 1956584, at *1 (N.D. Ohio May 13, 2010) ("A court may grant a request to modify a schedule only 'if it cannot reasonably be met despite the diligence of the party seeking the extension.'") (quoting *Leary* v. *Daeschner*, 349 F.3d 888, 906 (6th Cir. 2003)); *C.F.* v. *Capistrano Unified Sch. Dist.*, 656 F. Supp. 2d 1190, 1193 (C.D. Cal. 2009). There is ample good cause here for the proposed modifications to the existing schedule.

Despite Dyson's diligence in pursuing its claims and defenses while providing the discovery Plaintiff has requested, there are currently too many outstanding issues that affect Dyson's ability to prepare its expert reports. Testimony and documents regarding the conception and reduction to practice of the inventions claimed in the patents-in-suit, the filing and prosecution of applications related to those patents, and the prior art that was considered, evaluated and ultimately presented or not presented to the USPTO are essential to Dyson's claims and defenses of invalidity, unenforceability and inequitable conduct, which will be the subjects of Dyson's opening expert reports.

With respect to inequitable conduct, Dyson bears the burden of proving that the "applicant, with intent to mislead or deceive the examiner, fail[ed] to disclose material information or submit[ted] materially false information to the PTO during prosecution." *McKesson Info. Solutions, Inc.* v. *Bridge Med., Inc.*, 487 F.3d 897, 913 (Fed. Cir. 2007) (citations omitted). Discovery from the individuals with knowledge regarding the relevant patent applications and the inventions claimed therein is therefore critical. *See Ed Tobergte Assoc. Co.* v. *Russell Brands, LLC*, 259 F.R.D. 550, 555-56 (D. Kan. 2009) (where inequitable conduct is

raised, "the mental impressions and knowledge of the attorney who prosecuted the patent application cannot otherwise be obtained from other discovery sources" besides depositions of the prosecuting attorneys themselves); *Powell* v. *The Home Depot U.S.A., Inc.*, No. 07-80435-CIV, 2009 WL 3855174, at *8 (S.D. Fla. Nov. 17, 2009) (discussing importance of inventor's deposition testimony in proving intent to deceive for inequitable conduct claim); *Plymouth Indus., LLC* v. *Sioux Steel Co.*, No. 8:05CV196, 8:05CV469, 2006 WL 695458, at *3-4 (D. Neb. Mar. 17, 2006) ("In determining inequitable conduct, the knowledge and actions of a patent applicant's attorney are chargeable to the applicant . . . . [C]ourts have recognized that 'the prosecuting attorney's mental impressions are crucial' to any claim of inequitable conduct . . . ."); *aaiPharma, Inc.* v. *Kremers Urban Dev. Co.*, 361 F. Supp. 2d 770, 774 n.3 (N.D. Ill. 2005) (where a defense of inequitable conduct is asserted, "discovery from [the] attorneys involved in the prosecution of the patents in suit is directly relevant").

Similarly, with respect to invalidity, for which Dyson also bears the burden of proof, it is critical that Dyson obtain information relating to the conception and reduction to practice of the inventions claimed in the patents-in-suit. For example, documents and testimony relating to the dates of conception and reduction to practice affect the prior art references that Dyson may rely upon to prove invalidity. *See Automotive Techs. Int'l, Inc.* v. *Siemens VDO Automotive Corp.*, 669 F. Supp. 2d 836, 844 (E.D. Mich. 2009) ("[A]n inventor can 'swear behind' alleged anticipatory prior art to show 'invention' for the purposes of defeating a claim for invalidity . . . . To do so, the inventor must usually show (1) constructive reduction to practice . . . or (2) conception and diligence in filing a patent application following the date of conception.").

Therefore, to prepare its opening expert reports, which are currently due on July 7, 2010, Dyson still needs:

- Documents from Wayne Conrad regarding his alleged conception and reduction to practice of the invention claimed in the Conrad patents and his involvement in the filing and prosecution of the applications relating to those patents;

- Documents from Bereskin & Parr regarding the filing and prosecution of the applications relating to the Conrad patents, including the prior art considered, evaluated and ultimately presented or not presented to the USPTO;

- Deposition testimony from Messrs. Conrad and Mendes da Costa regarding the applications relating to the Conrad patents;

- Plaintiff's completed production of documents relating to the '181 patent, including the conception and reduction to practice of the invention allegedly claimed therein;

- Production of all requested documents relating to the CMS 1000 (the "CMS 1000") by Plaintiff and the '181 patent inventors;[12]

- Deposition testimony from the '181 inventors regarding the alleged conception and reduction to practice of the invention claimed in the '181 patent and their involvement in the filing and prosecution of the applications relating to the '181 patent;

- Resolution of certain privilege claims asserted by McGarry Bair; and

- Deposition testimony from Mr. McGarry.

Although Dyson has used and continues to use its best efforts to work with Plaintiff's counsel to obtain the discovery it needs to prosecute its invalidity, unenforceability and inequitable conduct claims—while still providing the discovery Plaintiff has demanded—Dyson will not be able to obtain the above-listed discovery in enough time for its experts to prepare their opening reports by July 7.

---

[12] Plaintiff has offered, in response to Dyson's further attempt to reach a compromise on this issue, to produce documents showing variations of the CMS 1000, make a CMS 1000 available for inspection, and produce documents in response to Request Nos. 65-69 in Dyson's Third Request for Production of Documents. (Exs. 1, 6.) Plaintiff has not, however, provided any indication as to when such production and inspection might be completed.

-13-

Furthermore, both parties' expert reports will be affected significantly by this Court's *Markman* ruling.  *See*, *e.g*., *Am. Seating Co.* v. *Kustom Seating Unlimited, Inc.*, No. 1:07-CV-1284, 2010 WL 48951, at *5-6 (W.D. Mich. Feb. 4, 2010) (Jonker, J.) (noting the importance of claim construction to summary judgment in patent cases).  With the benefit of that ruling, both parties will be better able to focus their expert reports.

Dyson's proposed modifications to the existing schedule are reasonable and should give the parties a realistic amount of time to complete discovery, prepare expert reports and prepare for trial.  Dyson proposes an extension of approximately two months to the existing deadlines relating to experts, discovery, and the ADR conference.  Dyson believes that this additional time will allow Dyson to complete the discovery it requires to prepare opening expert reports and resolve any outstanding discovery disputes.  Dyson has also proposed extensions to the dates for the final pretrial conference and trial, subject to this Court's schedule, to allow the parties time to brief fully and argue any dispositive motions that may be made in effort to narrow the issues for trial.

Neither party will be prejudiced by the schedule modifications Dyson proposes.  *See Hilton-Rorar*, 2010 WL 1956584, at *1 ("Another important consideration . . . is whether the opposing party will suffer prejudice by virtue of the amendment.").  By contrast, under the current schedule, Dyson' ability to prosecute its defenses fully and prepare its expert reports will be severely prejudiced.

**CONCLUSION**

For the foregoing reasons, Dyson respectfully requests that this Court enter an Order modifying the current schedule in the CMO along the lines set forth above, subject to this Court's own schedule.

Dated: May 28, 2010

                                            Respectfully submitted,

                                            /s/Richard A. Gaffin

                                            Richard A. Gaffin
                                            Joseph M. Infante
                                            MILLER, CANFIELD, PADDOCK
                                            AND STONE, P.L.C.
                                            1200 Campau Square Plaza
                                            99 Monroe Avenue, N.W.
                                            Grand Rapids, Michigan 49503
                                            (616) 454-8656
                                            gaffin@millercanfield.com
                                            *Attorneys for Defendant Dyson, Inc.*

OF COUNSEL:
Garrard R. Beeney
Richard C. Pepperman, II
James T. Williams
Jane J. Jaang
SULLIVAN & CROMWELL LLP
125 Broad Street
New York, New York 10004
(212) 558-4000

-15-